IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
VENETIAN CASINO RESORT, LLC,   )
 d/b/a Venetian Resort Hotel   )
 Casino                        )
          Plaintiff,           )
v.                             )      CIVIL ACTION NO. 04-118
                               )
VENETIANGOLD.COM, et. al,      )
                               )
          Defendants.          )
```

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment and Defendants' cross Motion for Summary Judgment.  The Court granted Plaintiff's Motion for Summary Judgment and denied Defendants' Motion for Summary Judgment by Order dated June 17, 2005.  This Opinion explains that ruling. Plaintiff is the famous Venetian Casino Resort, located on the Las Vegas Strip.  Besides gambling, the Venetian Casino Resort is best known for its elaborate Venice-themed decorations and architecture.  Vincent Coyle registered VenetianGold.com and six other Defendant Domain Names that link to a website offering worldwide casino-type gaming services on the Internet.  In addition to the defendant Domain Names, Vincent Coyle also registered VenetianCasinoVegas.com and VenetianCasinoUSA.com. Plaintiff brought this action under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C § 1125(d)(1)(A), alleging that Defendant Domain Names are confusingly similar to Plaintiff's trademarks and that the registrant of Defendant

Domain Names had a bad faith intent to profit from those marks. The issues before the Court are (1) whether Plaintiff's marks are distinctive or famous, (2) whether Defendant Domain Names are confusingly similar to Plaintiff's marks, (3) whether the registrant of Defendant Domain Names had a bad faith intent to profit from Plaintiff's marks, and (4) whether Plaintiff is entitled to summary judgment. The Court grants Plaintiff's Motion for Summary Judgment because no genuine issue of material fact remains unresolved and Plaintiff is entitled to summary judgment as a matter of law. For the reasons which follow, the Court holds that Defendant Domain Names violate the ACPA because they are confusingly similar to Plaintiff's distinctive marks and the registrant of Defendant Domain Names evinced a bad faith intent to profit from those marks.

## I.  BACKGROUND

The Venetian Casino Resort ("Venetian," "Plaintiff," "VCR") is a hotel and casino resort that has operated on the Las Vegas Strip since 1999. VCR has at least fifteen United States Trademark Registrations for its service marks, including VENETIAN, THE VENETIAN, THE VENETIAN RESORT HOTEL CASINO. Ten of VCR's Trademark Registrations were issued before Vincent Coyle and Global DIP Gaming SA registered Defendant Domain Names VenetianGold.com, VenetianGold.net, VenetianGoldCasino.com, VenetianGoldCasino.net, VenecianGold.com, VeniceGoldCasino.com, and VenicianGold.com. Furthermore, Vincent Coyle knew about the

2

VCR in Las Vegas before he registered any of the defendant Domain Names.  Pl.'s Mem. Supp. Mot. Summ. J. at 6.  Vincent Coyle also registered VenetianCasinoVegas.com and VenetianCasinoUSA.com.

Defendants in this case are seven domain names that are linked to a website offering internet casino-type gaming services within and outside the United States.  Vincent Coyle is the President and Chief Executive Officer of Global DIP, a Costa Rican Corporation.  Global DIP launched its VenetianGold.com website in June of 2001.  Since then, the website's business has been conducted in the United Kingdom by Vincent Coyle, but the website's servers are in Costa Rica.  Vincent Coyle concedes that he placed at least four advertisements in gaming publications distributed within the United States, and failed to exclude at least 132 players who registered with U.S. addresses.  Defs.' Resp. Pl.'s Opp'n Defs.' Mot. Summ. J. at 11-12.

## II. DISCUSSION

### A. Standard of Review

Under Rule 56(c), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  When reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1996).  Once a motion for summary judgment is properly made and supported, the

opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 248. "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

**B. Analysis**

The Court grants Plaintiff's Motion for Summary Judgment because no genuine issues of material fact remain for trial and Plaintiff is entitled to summary judgment as a matter of law. Plaintiff has established that Defendant Domain Names violate the ACPA. First, the Venetian's marks are distinctive. Second, Venetiangold.com and the other defendant Domain Names are confusingly similar in sight, sound, and meaning to Plaintiff's marks. Third, the registrant of Defendant Domain Names evinced a bad faith intent to profit from Plaintiff's marks. The Court grants Plaintiff's motion because no reasonable jury could conclude that Defendant Domain Names do not violate the ACPA.

***The Anti-Cybersquatting Consumer Protection Act***

Congress enacted the Anti-Cybersquatting Consumer Protection Act ("ACPA") on November 29, 1999, in response to an onslaught of e-savvy entrepreneurs who registered domain names incorporating protected trademarks. *See Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 267 (4th Cir. 2001). Congress viewed the practice of cybersquatting as harmful because it threatened "the continued growth and vitality of the Internet." S. Rep. No. 106-140, at 9 (1999). Under the ACPA, a person is a cybersquatter and is liable to the owner of a protected mark if that person:

> (i) has a bad faith intent to profit from [a mark]; and
> (ii) registers, traffics in, or uses a domain name that–
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark;

15 U.S.C. § 1125(d)(1)(A) (1999). The statute further provides:

> (B)(I) In determining whether a person has a bad faith intent . . . a court may consider factors such as, but not limited to
> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the

>mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names . . .; and
>(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous . . .

15 U.S.C. § 1125(d)(1)(B)(i). In addition to the nine enumerated factors, "a court may rely on other indicia of bad faith intent to profit." *Harrods Ltd. v. Sixty Internet Domain Names*, 157 F.Supp.2d 658, 666 (E.D.Va 2001). "[T]he most important grounds for finding bad faith 'are the unique circumstances of th[e] case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.'" *Id.* (quoting *Sporty's Farm, L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)). The ACPA also contains a safe harbor provision explaining that bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise

6

lawful." 15 U.S.C. § 1125 (d)(1)(B)(ii).

The ACPA provides that a plaintiff may bring an *in rem* action against the allegedly-infringing domain name when the plaintiff cannot secure personal jurisdiction over the domain name's registrant. See 15 U.S.C.A. § 1125(d)(2)(A).

### *The Distinctiveness of Plaintiff's Mark*

The Venetian Casino Resort is a landmark on the Las Vegas Strip because of its distinct marketing and brand. The VCR has fifteen trademark registrations, including VENETIAN, THE VENETIAN, and VENETIAN RESORT HOTEL CASINO. These marks are presumptively distinctive and entitled to protection.

Trademarks that are "fanciful," "arbitrary," or "suggestive" are inherently distinctive. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). "Fanciful marks are, in essence, made-up words expressly coined for serving as a trademark." *Id.* Examples of fanciful marks include Clorox®, Kodak®, and Exxon®. *Id.* Arbitrary marks use words in common usage, but the words do not describe any quality, ingredient, or characteristic of the goods or services. *Id.* Examples include Tea Rose® flour, Camel® cigarettes, and Apple® computers. *Id.* Suggestive marks connote, without describing, some quality, ingredient, or characteristic of the good or service. *Id.* Examples include Coppertone®, Orange Crush®, and Playboy®. *Id.*

7

In contrast, "descriptive" marks are not inherently distinctive. *Id.* Descriptive marks merely describe a function, use, characteristic, size, or intended purpose of the product, such as: 5 Minute glue, King Size men's clothing and the Yellow Pages telephone directory. *Id.* Descriptive marks can become distinctive only if they acquire secondary meaning. *Pernini Corp. v. Pernini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990). "Secondary meaning exists if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *Id. (*quoting *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 160-61 (4th Cir.), *cert. denied*, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962)).

Because the United States Patent and Trademark Office ("PTO") issued certificates of registration for Plaintiff's marks without requiring proof of secondary meaning, the Court begins with the presumption that Plaintiff's marks, at minimum, are "descriptive and ha[ve] obtained secondary meaning." *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001); *Retail Serv. Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) ("the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection").

VCR's marks are inherently distinctive because they are

8

arbitrary. Arbitrary marks use words in common usage, but the words do not describe any quality, ingredient, or characteristic of the goods or services. *Sara Lee Corp.,* 81 F.3d at 464. Geographic terms are arbitrary when there is no connection between the origin of the goods or services and the geographic location. *See, e.g. Taj Mahal Enter. Ltd. v. Trump*, 745 F. Supp. 240, 248 (D.N.J. 1990)(holding that Taj Mahal is inherently distinctive in the "food service, casino and guest accommodations markets because it takes some imagination to link those services with the name of a palatial crypt located in India"). Like the Taj Mahal, VCR offers casino, hotel, retail shopping, website, entertainment and spa services. "Venetian" is arbitrary because, although it may be a common word, it has no ordinary connotation as a description for VCR's services. Because VCR's marks are arbitrary, the marks are inherently distinctive and deserve protection.

Defendant Domain Names argue that Plaintiff's marks are merely descriptive because they describe the VCR's theme. Even without the presumption, however, the Court finds that Plaintiff's marks acquired secondary meaning before Defendant Domain Names were registered because five of the six factors favor the plaintiff. Factors to consider when determining whether a mark has acquired secondary meaning include: (1) advertising expenditures, (2) unsolicited media coverage of the product, (3) sales success, (4) consumer studies linking the mark to the source, (5) attempts to plagiarize the mark, and (6) the

9

length and exclusivity of the mark's use.  *Pernini*, 915 F.2d at 125.

First, VCR spent $7.5 million in 2000 and $6 million in 2001 to advertise the Venetian throughout the United States in tourist publications, consumer publications, directories, gaming publications, and newspapers.  Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at ¶ 4.  Second, VCR enjoyed substantial unsolicited media coverage in 2000 and 2001, including features on all major broadcast and cable networks.  *Id.* at ¶ 8.  Third, VCR earned $566 million gross annual revenue by 2001.  *Id.* at ¶ 15.  Fourth, Plaintiff cites at least two examples[1] where VCR has prevailed in fending off persons who were plagiarizing or infringing on its marks.  *Id.* at 18.  Fifth, VCR obtained ten U.S. Trademark Registrations by April of 2001, before Defendant Domain Names were registered.  *Id.* at 12.  Whereas five factors favor Plaintiff, only one factor favors the defendant Domain Names.  As Defendant notes, Plaintiff has not provided any consumer studies linking the mark to the source.  Because Defendant Domain Names have not overcome the presumption that Plaintiff's marks are distinctive, and the secondary meaning factors heavily favor Plaintiff, the Court finds that Plaintiff's marks are distinctive.

---

[1] *Internet Domain Billions, Inc. v. Venetian Casino Resort, LLC*, No. 01-5417, 2002 U.S. Dist. Lexis 11805 (E.D.Pa. May 31, 2002) and *Venetian Casino Resort, LLC v. International Services, Inc.*, Case No. D2001-0678 (WIPO Oct. 11, 2001).

***Defendant Domain Names are Confusingly Similar to Plaintiff's Service Marks***

The Court finds that Defendant Domain Names are confusingly similar to Plaintiff's service marks because a reasonable consumer "might think that they were used, approved, or permitted by [Plaintiff]." *Harrods Ltd.*, 157 F.Supp.2d at 677. "In the cybersquatting context, 'confusing similarity' must simply mean that the plaintiff's mark and the defendant's domain name are so similar in sight, sound and meaning that they could be confused." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:78 (4th ed. 2004). In *Harrods*, the defendant registered domain names that merely combined the plaintiff's distinctive Harrods mark with generic terms. *Harrods Ltd.*, 157 F.Supp.2d at 674 n.25 (listing as examples: harrodsbank, harrodsfinancial, harrodsconsulting, harrodsbrokers, harrodsinvestments, and harrodsloans). The *Harrods* court held that the defendant's "use of such qualifiers does not diminish the similarity of the defendant Domain Names." *Id.* at 678.

In this case, Plaintiff's service marks include VENETIAN, THE VENETIAN, and VENETIAN RESORT HOTEL CASINO. Defendant Domain Names include VenetianGoldCasino.com, VenetianGoldCasino.net, VenetianGold.com, VenetianGold.net, VenecianGold.com, VeniceGoldCasino.com, and VenicianGold.com. Defendant attempts to distinguish *Harrods* because "gold" is suggestive of gambling and is not generic like the qualifiers in that case.

11

Irrespective of whether "gold" is suggestive or generic, the Court finds that Defendant Domain Names are confusingly similar to Plaintiff's marks because they "bear such a visual resemblance that internet users would reasonably assume that the names were modified, used, approved, and/or permitted" by the plaintiff. *Omega S.A. v. Omega Eng'g, Inc.*, 228 F.Supp.2d 112, 127 (D.Conn. 2002).

### *Defendant Domain Names Were Registered With Bad Faith Intent to Profit From Plaintiff's Marks*

The Court finds that Defendant Domain Names were registered with bad faith intent to profit from VCR's marks because the statutory factors heavily favor Plaintiff.  The ACPA establishes nine factors that courts may consider, but the presence or absence of any of the factors may not be determinative.  *See* 15 U.S.C. § 1125(d)(1)(B)(i); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002)(citing ACPA's legislative history).  Factors I, III, IV, V, VIII, and IX favor the plaintiff, while Factor VII favors the defendant Domain Names.  Each factor is analyzed separately below.

**Factor I: The trademark or other intellectual property rights of the person, if any, in the domain name**

Vincent Coyle and Global DIP Gaming registered the defendant Domain Names in April and May of 2001.  At that time, they had no

12

trademark or other intellectual property rights in the domain names.  In contrast, VCR had ten issued U.S. registrations for VENETIAN service marks before Defendant Domain Names were registered.  Therefore, Factor I favors the plaintiff.

> **Factor II: The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person**

Both parties agree that Defendant Domain Names do not include the legal name of either Vincent Coyle or Global DIP Gaming.  Furthermore, the domain names were not commonly used to identify either Mr. Coyle or Global DIP Gaming.  Accordingly, Factor II is not relevant here.

> **Factor III: The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services**

Both parties agree that Defendant Domain Names were not previously used in connection with the bona fide offering of any goods or services.  Factor III favors the plaintiff.

> **Factor IV: The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name**

Both parties agree that Defendant Domain Names are not used in connection with noncommercial or fair use of VCR's Venetian marks. The defendant Domain Names have been used for a commercial gaming website since June 2001. Because Vincent Coyle and Global DIP Gaming registered the defendant Domain Names for commercial purposes, Factor IV favors the plaintiff. *See People for the Ethical Treatment of Animals, Inc. v. Doughney*, 113 F.Supp.2d 915, 920 (E.D.Va 2000)(citing commercial use as demonstrating bad faith).

**Factor V: The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site**

The Court finds that Vincent Coyle and Global DIP Gaming intended to divert consumers from Plaintiff's online location to the defendant Domain Names. First, Vincent Coyle knew about Plaintiff's Las Vegas casino before he registered the defendant Domain Names. Pl.'s Mem. Supp. Mot. Summ. J. at 6. Second, Mr. Coyle also registered the domain names VenetianCasinoVegas.com and VenetianCasinoUSA.com. Even though Mr. Coyle never used

14

these two domain names, under Fourth Circuit precedent, a registrant's awareness that a domain name may be confused with another's mark is evidence of the registrant's bad faith. *Virtual Works*, 238 F.3d at 269.  Mr. Coyle's registration of VenetianCasinoVegas.com and VenetianCasinoUSA.com is persuasive evidence that he did not choose the defendant Domain Names merely to "conjure up an image of Venice, the birthplace of gambling." Def. Opp'n Pl.'s Mot. Summ. J. at 28.

Third, Defendant advertised in the United States and some of its players registered with U.S. addresses.  Defs.' Resp. Pl.'s Opp'n Defs.' Mot. Summ. J. at 11-12.  Defendant argues that its use of "Venetian" is concurrent and lawful because Defendant Domain Names provide online gaming for customers outside the United States.  As Defendant notes, the ACPA does not prohibit all concurrent uses of a mark.  *See Harrods*, 302 F.3d at 233 (citing examples of legitimate concurrent use, such as the "use of the 'Delta' mark for both air travel and sink faucets"). Concurrent use is prohibited, however, when the mark is used "in a manner that would cause consumer confusion, such as by using the mark in the other's geographic area."  *Id.*  Defendant Domain Names do not qualify as legitimate concurrent users[2] because they actively pursued, and refuse to exclude, American consumers.

---

[2] Plaintiff attempted to offer into evidence a Venetiangold.com brochure that security guards allegedly confiscated from commercial solicitors in VCR's foyer in Las Vegas.  Pl.'s Mem. Supp. Pl.'s Mot. Summ. J. at 6.  The brochure was not admissible as presented, and was not considered.

15

Because Vincent Coyle demonstrated an intent to divert customers from Plaintiff's online location for commercial gain, Factor V favors the plaintiff.

**Factor VI: The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct**

Both parties agree that this factor is not applicable in this case.

**Factor VII: The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct**

Both parties agree this factor weighs in favor of Defendant because Mr. Coyle provided accurate contact information when he registered the defendant Domain Names.

**Factor VIII: The person's registration or acquisition of**

16

> **multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names**

Vincent Coyle knew of VCR's Las Vegas casino before registering the defendant Domain Names. Pl.'s Mem. Supp. Mot. Summ. J. at 6. Since the VCR opened in 1999, Plaintiff has spent millions in advertising. In 2001 alone, VCR spent over six million dollars advertising the Venetian in tourist publications, consumer publications, directories, gaming publications, and newspapers. To protect its name, VCR registered fifteen service marks, including VENETIAN, THE VENETIAN, and VENETIAN RESORT HOTEL CASINO.

In addition to the seven defendant Domain Names, Vincent Coyle and Global DIP Gaming also registered: Venicangold.com, Venicengold.com, Venicingold.com, Venecangold.com, Venecingold.com, Venetangold.com, Venetengold.com, Venitangold.com, Venciangold.com, and Venitengold.com.

Because Vincent Coyle knew about the VCR before he registered the defendant Domain Names, the Court finds that Factor VIII favors the plaintiff.

> **Factor IX: The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of 15 U.S.C. § 1125(c)(1)**

17

As discussed above, the Court finds that Plaintiff's marks are distinctive because they are arbitrary. Therefore, Factor IX favors the plaintiff.

In sum, Factors I, III, IV, V, VIII, and IX favor the plaintiff. Factors II and VI do not favor either party, and Factor VII favors the defendant Domain Names.

### *ACPA's Safe Harbor*

The Court finds that ACPA's Safe Harbor does not apply in this case. The safe harbor only applies when the defendant both "believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). As the Fourth Circuit noted, "[a]ll but the most blatant cybersquatters will be able to put forth at least some lawful motives for their behavior. To hold that all such individuals may qualify for the safe harbor would frustrate Congress' purpose by artificially limiting the statute's reach." *Virtual Works*, 238 F.3d at 270. Because the statutory factors strongly support a finding of bad faith, the Court finds that Defendant Domain Names do not qualify for ACPA's safe harbor provision. *See id.* ("A defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the Act's safe harbor provision").

Plaintiff's trademark infringement claim is dismissed

because Plaintiff did not allege trademark infringement in its Amended Complaint.

### III. CONCLUSION

The Court grants Plaintiff's Motion for Summary Judgment because no reasonable jury could find that Defendant Domain Names do not violate the ACPA. For the reasons stated herein, Defendant's Motion for Summary Judgment is denied.

For the foregoing reasons, it is hereby

ORDERED that Plaintiff Venetian Casino Resort's Motion for Summary Judgment is GRANTED and Defendant Domain Names' Motion for Summary Judgment is DENIED.

It is further ORDERED that JUDGMENT is ENTERED in favor of Plaintiff Venetian Casino Resort and against Defendant Domain Names VenetianGold.com, VenetianGold.net, VenetianGoldCasino.com, VenetianGoldCasino.net, VenecianGold.com, VeniceGoldCasino.com, and VenicianGold.com.

It is further ORDERED that under 15 U.S.C. § 1125(d)(2)(D), Verisign, as the registry, change the registrar of record for the Defendant Domain Names VenetianGold.com, VenetianGold.net, VenetianGoldCasino.com, VenetianGoldCasino.net, VenecianGold.com, VeniceGoldCasino.com, and VenicianGold.com from the current registrar to a registrar selected by the Venetian Casino Resort, LLC, which subsequently will register the Defendant Domain Names in the name of the Venetian Casino Resort, LLC.

The Clerk is DIRECTED to ENTER JUDGMENT pursuant to Federal Rule of Civil Procedure 58, and forward copies of this Order to

counsel of record and Verisign Global Registry Services, 21345 Ridgetop Circle, Dulles, VA 20166.

ENTERED this __28th_____ day of July, 2005.


/s/_____
                                    Gerald Bruce Lee
                                    United States District Judge

Alexandria, Virginia
07/28/05